CARE, J.
It is an observation as trite as it is true, that, in construing a will, we are to look to the whole and to every part, in order to ascertain what the testator meant by any clause, sentence or expression. We are to inquire, what this testator meant in that clause of his will, which relates to the freedom of these five slaves. Did he mean, that they should be free, provided the laws, at the period appointed by him, should allow them to be free, and if not, that they should pass to his children? Or did he mean, that they should remain slaves, and pass to his children, unless the laws would permit both their freedom and residence in the state? The chancellor thought he meant the latter. I cannot concur with him. It is evident to me, that these slaves did not enter into the arrangement of his property, which the testator was making among his descendants. It is fair to conclude too, that they were favourites, as they were selected from among his slaves. Reasoning a priori, we should hardly suppose, that the testator who wished to confer the boon of freedom on his slave, would make that dependent *on his residence in this or that quarter of the globe. But all reasoning of this kind must yield to the actual expression of his will. Bet us analyze the words to ascertain what that is. “If it be agreeable to the laws, it is my will, that after the death of my wife &c. my slaves Joan &c. shall, as soon as they attain the age of thirty-one, be freed.” Here is a clear, definite, complete purpose expressed; the freedom of these slaves, after the death of his wife, as they attained to thirty-one, if the laws would permit. Is this purpose afterwards changed? “And I appoint my friends J. M. and E. H. H. trustees for the liberation of said slaves:” this, so far from changing, provides the means for effecting his purpose; he appoints trustees for the liberation of the slaves. “And for them to make the necessary application to court, both as to their freedom, and their remaining in the state.” Do these words indicate any change of the purpose? Not to my mind. They prove still farther, the solicitude of the testator as to the object in view. They are means employed to insure the end, the freedom of the slaves. He was an ignorant, illiterate man: he had an idea, that some application to court was necessarj’ as to their freedom: he directs his trustees to make this: and wishing still further to provide for their comfort, he directs his friends also to make the application to court necessary for their remaining in the state. It is clear to my mind, that this last application was never meant by the testator, in restraint of the freedom before given ; that he had no idea of saying that their freedom should depend on obtaining permission for them to remain in the state. Both the words he has used, and the reason of the thing, forbid this. They are to make application, in behalf of the slaves, “both as to their freedom, and their remaining;” shewing that, in the testator’s mind, they were two distinct and independent things; the freedom first, the residence afterwards. And this is true too, on the law of the case: no application for remaining in the state, could be made to the court, but for slaves already freed. The testator proceeds, ‘ ‘If the laws of the state be against this procedure:” what *procedure? I answer, the freeing his slaves. He had just before said, if it be agreeable to the laws of the state, I wish these slaves to be freed, and had provided the means to secure their freedom; then he adds, if the laws of the. state be against the procedure, then I give them to *301 my children. Do we not see here, clearly, each alternative? If the laws will suffer it, I free these slaves; if they will not suffer it, I give them to my children.
GREEN, J.
The only question in this case, is, Whether the testator intended, that the slaves in question should be freed (to use his own expression) upon his wife’s death, at all events, unless the law in force when that happened, should prohibit emancipation upon any terms? or that they should be freed, only in the event, that the laws should then permit emancipation, and those emancipated to remain in the state, by leave of the courts or otherwise? This last was the construction adopted by both the courts below, and, I think, the correct one. The expression “if the laws of Virginia be against the said procedure,” refers to all which the testator had directed to be done, both to the emancipation of the slaves, and procuring permission to them to remain in the state, for which purposes trustees were appointed.
The laws in force when the will was made, permitted emancipation, but imposed upon those emancipated, the condition of leaving the state within a twelve month after their right to freedom accrued, or if infants, after they attained their age, under the penalty of being sold as slaves by the overseers of the poor, unless they were permitted to remain by an order of a county or corporation court, in cases in which the emancipation was founded upon the extraordinary merit of the slave, and the court was satisfied by proofs of his general good conduct and character. In the exercise of this power, the courts had a considerable latitude of discretion, which was restrained by the act of 1819, which was passed a few months before, and which was to take effect a few months after, this will was made, by the requisition that *the act of extraordinary merit, for which the slave was emancipated should be stated in the record. These laws, or at least those in force when he made his will, were obviously in the mind of the testator, and dictated the provision under consideration. He could hardly have doubted, but that, at his wife’s death, the laws would allow emancipation upon some terms; but he might very reasonably have doubted, whether they would allow the courts to give leave to the slaves he wished to emancipate, to remain in the state, or not. If they should, he desired to emancipate them ; if not, to distribute them amongst his children. Under these laws, no court has power to permit the slaves in question, if emancipated, to remain in the state, for they are not suggested to have done any act of extraordinary merit. I think the decree should be affirmed.
BROOKE, P., concurred with GREEN, J., and the decree was affirmed.